The case is not stated with a view to the question whether Jennings was the lessee or the servant of Pool, but assumes that he had a property in the crop and had effectually conveyed it to the plaintiff. Taking that to be so, the Court is of opinion there was a conversion of the corn for which the defendant is answerable to the plaintiff. It is the common doctrine that if an officer, under an execution against the goods of one, sell the goods of another, he and the purchaser are jointly and severally liable in trover. If this corn had been gathered and the sale made at the heap, there could be no doubt of the plaintiff's remedy against the officer, or of his right to recover the full value, as for a conversion if the purchaser under color of the purchase took it away. It seems to have been supposed that it was otherwise in this case, because the sale was utterly void and gave no color to take the corn, though it had belonged to the debtor Jennings, upon the ground that the parties were not in the field at the sale, and, therefore, the defendant did not take and deliver actual possession of the corn to the purchaser. But the Court holds the levy and sale well enough in that respect. If the corn had been gathered and lying in a pile in a stack-pen, as is usual, the officer need not get into the pen, but may sell standing on one (208) side of the fence while the corn is on the other. There being no forcible resistance at the time, that is a sufficient presence of the *Page 145 
corn and possession by the officer to render his sale effectual and must be considered as including a delivery to the purchaser, especially if the latter speedily take the thing away. The sale under such circumstances imports that the right and possession shall be in the purchaser primafacie. It must be the same in the case before the court, at least, so far as depends upon the mode of selling. Skinner v. Skinner, 26 N.C. 175, and McNeely v. Hart, 30 N.C. 492, sustain it and lay it down that in order to make a valid sale of a standing crop, the officer need not go inside of the field, but it is sufficient if he be in view at such convenient distance that bidders can see what is offered and judge for themselves of the quantity, quality, and value thereof. Though the point does not seem to have been raised at the trial, yet it appears upon the facts, and therefore it seems incumbent upon us to consider, whether the sale was or was not effectual by reason of the state in which the crop was. If a crop not severed from the soil cannot be taken in execution and sold, it may be that a sale by the officer, though made in the field, is so utterly void as not only not to vest the right and possession in the purchaser, but also not to constitute an authority or color of authority in him to take the crop by harvesting and removing it. At present we are not called on to say how that is, since the crop in this case was, we think, the subject of execution. At common law, annual crops were the subjects of immediate sale as personal chattels, and in order to render the execution effectual, it was held that of necessity a possession passed to the purchaser, which the law protected by investing him with the rights of ingress and egress to gather and take the crop away. It was upon clear authorities thus ruled in Smith v. Tritt, 18 N.C. 241. Until the purchaser secure the crop, it may well be that neither he nor the officer is liable in trover, for by the sale merely the crop did not become in fact separated from the soil so as to be purely personal and (209)ipso facto converted. But however that might be, it seems clear to the Court that a sale of a standing crop, which legally passes the right, must be an authority from the officer to the purchaser to take actual possession, and in convenient season to secure and remove the crop. It can be no less, for after the officer has made the sale, and thereby transferred the property, he is not bound to proceed further and gather the crop so as to deliver actual possession after severance. The purchaser takes such possession by force of the sale by the officer and under his authority. When Williams thus took actual possession and used the corn, he was unquestionably guilty of a conversion. It would seem plain that the officer under whose authority all that was done, and was from the beginning intended by all the parties to be done, must be a partaker in the conversion and liable for it. From the condition of the property the acts are separated from each other in point of time, but *Page 146 
in truth they constitute but different parts of an entire transaction. It was a conversion in him whose hand did the act, and also in him who authorized it, just as much so as if he had been again present at the gathering of the crop and commanded or aided in it. Great mischief would follow if the officers were not liable, as the purchaser might not be able to answer to the owner for the value of the goods. It has just been stated that this crop was liable to execution, supposing it to have been the property of Jennings, for although the act of 1844, ch. 35, has altered the law of execution against crops on the ground, it does not reach the present case. It enacts, shortly, that it shall not be lawful for any officer to levy an execution on any growing crop. The term "growing" imports that it is not come to maturity, but is green, or not made. That would be the construction if it depended on that word in the enactment, because it is the natural sense of it, and because a statute in (210) restriction of the remedies of creditors against the property of debtors is not to receive a liberal interpretation. But the intention in this enactment appears very explicitly in the title of the act, which is, "An act to prevent the levying of executions upon growing crops until said crops are matured." That clearly denotes that standing crops when ripe remain subject to execution as they are at common law. It is not, indeed, expressly stated that this crop matured, but facts are stated which require that to be presumed in the absence of something to the contrary, as the sale must have been about the middle of October, and it is known as a matter of common observation that the crop of Indian corn in the eastern part of the State is ordinarily ripe by that time. Indeed, the case states that "some few days" after his purchase, Williams gathered the corn and used it.
PER CURIAM. Venire de novo.
Cited: Kesler v. Cornelison, 98 N.C. 385.
(211)